UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

INEOS USA LLC,                      §
                                    §
        Plaintiff,                  §
VS.                                 §     CIVIL ACTION NO. 3:13-CV-00017
                                    §
BERRY PLASTICS CORPORATION,         §
                                    §
        Defendant.                  §

## MEMORANDUM AND ORDER

Plaintiff Ineos USA, LLC owns all rights and interest in United States Patent No. 6,846,863 ("the '863 patent") entitled "Polyethylene Composition and Method of Making Shaped Objects From Same"—essentially a patent for making bottle caps. The application for the '863 patent was filed in 2001, and the patent issued in 2005. Inoes sued Defendant Berry Plastics Corporation alleging that Berry has infringed the '863 patent by producing bottle caps for use on Coca Cola's Dasani brand water bottles. In response, Berry filed a Motion for Summary Judgment (Docket Entry No. 45) seeking to have Ineos's '863 patent declared invalid as anticipated by two prior art references. One of those is United States Patent No. 5,948,846 (the '846 Patent), the application for which was filed in 1996; the other is Japanese Patent Application No. Sho-57 (1982)-170944A (the "Murakami application") which was filed in the early 1980s. Having considered the Parties' briefing, technology tutorials, oral argument, and the applicable law, the Court now

decides whether the prior art anticipated the '863 Patent.

## I.   BACKGROUND

Ineos is the American subsidiary of INEOS, a multinational chemicals company headquartered in Switzerland.  Barry Plastics Corporation is a company headquartered in Evansville, Indiana that manufactures and markets plastic-packaging products.

On January 25, 2005, United States Patent 6,846,863 ("the '863 patent") was issued to two inventors, Denis Plume and Pascal Vanden Berghe.  Ineos subsequently purchased all rights and interest in the '863 patent.  The '863 patent focused on a method for manufacturing bottle caps that avoided the issues of bad odor and flavor that came with the use of a common slip agent named docosemide. Such lubricating or slip agents are integrated into bottle caps to reduce "torque," or the force necessary to twist the cap off a bottle.  Fatty acid amides are regularly used as slip agents in polyethylene compositions such as bottle caps.  These fatty acid amides are formed by combining a fatty acid and an amine.  Fatty acid amides can be either "unsaturated" or "saturated."

Whether a fatty acid amide is "unsaturated" or "saturated" depends on if its long carbon chain contains carbon-carbon double bonds.  Saturated fatty acid amides contain no such carbon-carbon double bonds in their long carbon chains. Conversely, unsaturated fatty acid amides must contain at least one carbon-carbon

double bond in their long carbon chains.

The fatty acid amides used in the packaging industry are formed from fatty acids isolated from natural sources of fats and oils (that is, plants and animals). Four of the more common fatty acid amides are erucamide, behenamide, oleamide, and stearamide.



**Erucamide**

**Behenamide**

**Oleamide**

**Stearamide**

Figure 1: Structural Depictions of Fatty Acid Amides.  Docket Entry No. 45-3 at ¶ 7.[1]

---

[1] In these structural depictions of the fatty acid amides, the carbon-carbon bonds are represented by ⌃⌃ which by itself represents three carbon atoms bonded together. Docket Entry No. 45-3

Stearamide and behenamide are both primary, linear, saturated, fatty acid amides, which Ineos refers to as PLSFAAs.  Stearamide and behenamide have 18 and 22 carbon atoms, respectively.  Screw caps like those used on water bottles are often made of polyethylene, including high-density polyethylene.  As defined by McGraw-Hill's Dictionary of Scientific and Technical Terms, high-density polyethylene is "[a] thermoplastic polyolepfin with a density of 0.941–0.960[2] gram per cubic centimeter (0.543–0.555 ounce per cubic inch). Abbreviated HDPE." *McGraw-Hill Dictionary of Scientific and Technical Terms* 935 (5th ed. 1994), available at Docket Entry No. 77-20 at 4.

Previously, some manufacturers—including Ineos—had sought to address the flavor and odor issue caused by the use of slip agents through the addition of zeolite to act as a "flavor and odor trap."  Docket Entry No. 1 ¶ 8.  The '863 patent sought to address the flavor and odor problem through use of a lubricating agent without the negative flavor and odor characteristics that prompted the use of zeolite.  The '863 patent contains 12 claims, of which only one—claim 1—is an independent claim.

Berry began to manufacture, sell, and distribute bottle caps using a method that Ineos alleges infringes claims 1–7 and 9–11 of the '863 patent.[2]  Because of

---

at ¶ 7.  Double carbon-carbon bonds are represented by ══ which by itself represents two carbons with a double bond in between.  *Id.*

[2] The parties filed a Joint Claim Construction Statement with the Court on September 9, 2013,

Berry's allegedly infringing activity, Ineos brought suit under 35 U.S.C. § 271. Docket Entry No. 1.  Berry then moved for summary judgment seeking a ruling that the '863 patent is invalid as anticipated by two pieces of prior art—Ineos's own "'846 patent and the Murakami Application."  Docket Entry No. 45 at 36. Specifically, Berry alleges that the '846 patent anticipates each of the '863 patent's asserted claims 1–7 and 9–11 and that the Murakami Application anticipates claims 1–6 and 9–11.  Docket Entry No. 45.  After extensive briefing by both sides, the Court heard oral argument on Berry's Motion on December 5, 2013. Ineos and Berry then submitted their proposed findings of fact and conclusions of law.

## II.   SUMMARY JUDGMENT STANDARD FOR INVALIDITY CLAIM

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment.  *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

---

and there is no dispute between Ineos and Berry as to the correct construction of any claim terms, phrases, or clauses in the '863 Patent.  Docket Entry No. 60.

The '863 patent enjoys a rebuttable presumption of validity under 35 U.S.C. § 282. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (quoting *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir. 1983)). A "party asserting invalidity due to anticipation must prove anticipation, a question of fact, by clear and convincing evidence." *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 975 (Fed. Cir. 2010); *see also Microsoft Corp. v. i4i Ltd. P'ship*, --- U.S. ----, 131 S. Ct. 2238, 2245–46 (2011). As with other issues of fact, however, a court may rule on anticipation at the summary judgment stage if, viewing any disputed facts in favor of the nonmovant, no reasonable jury could find that the patent was not anticipated by the prior art. *See Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1383 (Fed. Cir. 2009) (affirming the district court's grant of summary judgment on the ground that an advertisement constituted an anticipatory printed publication that invalidated the claims of the patent at suit); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) ("Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." (citation omitted)). The fact that USPTO considered the '846 patent as prior art during the '863 patent's prosecution does not impose a higher burden on Berry: "As the Supreme Court explained in *i4i*, there is no heightened burden of proof when a reference was

previously considered by the PTO, and no lowered burden of proof if a defendant raises a new reference or argument during litigation." *Sciele*, 684 F.3d at 1260 (citing *i4i*, 131 S. Ct. at 2250).

## III. INVALIDITY

### A. The '846 Patent Is Prior Art

Prior art includes "a patent granted on an application . . . by another filed . . . before the invention by the applicant." 35 U.S.C. § 102(e) (2) (2011) (pre-America Invents Act).[3]   The earliest claimed priority date of the '863 patent is March 22, 2000.  The application leading to the issuance of the '846 patent (No. 08/770,891) was filed on December 20, 1996, and its date of patent is September 7, 1999.  The Murakami Application was filed on April 14, 1981 and published on October 21, 1982.  Both parties agree that the '846 patent is prior art to the '863 patent.  The Parties dispute whether the Murakami Application's publication meets the requirements for it to be prior art to the '863 patent under § 102(b), but the Court need not decide this question because it can resolve the core issues while limiting its analysis to the '846 patent.

---

[3] The America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011), applies only to claimed inventions having an effective filing date on or after March 16, 2013.  The Court therefore applies the pre-America Invents Act version of § 102 to the patents in this case.

### B. Anticipation

Because the '846 patent is prior art, it will anticipate—and therefore render invalid—a claim of the '863 patent if "each and every element as set forth in the claim is found, either expressly or inherently described" in its specifications. *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citation and internal quotation marks omitted). Anticipation analysis is at its core an inquiry into whether the claimed invention is new. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008) ("Claimed subject matter is 'anticipated' when it is not new; that is, when it was previously known."); *see also* Donald S. Chisum, *Anticipation, Enablement and Obviousness: An Eternal Golden Braid*, 15 AIPLA Q.J. 57, 58 (1987) ("Anticipation is a conclusion as to the failure of the invention to meet the patent law requirement of novelty. Simply put, one cannot claim a patent right in what is old, 'old' meaning identically described or disclosed in the prior art. A claim is said to be 'anticipated' by such a description or disclosure."). As the Federal Circuit has put it, "that which would literally infringe if later anticipates if earlier." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). An element is described if it "is necessarily present in the thing described in [a prior art] reference, and . . . would be so recognized by persons of ordinary skill." *In re Robertson*, 169 F.3d at 745 (citation and internal quotation marks omitted).

### 1.  Claim 1

As mentioned above, claim 1 of the '863 patent is its only independent claim.  In describing a polyolefin-based composition containing polyethylene and a lubricating agent, the '846 patent either expressly or inherently discloses every element of claim 1 of the '863 patent, which describes:

> 1.  Composition comprising at least 94.5% by weight of a polyethylene with a standard density of more than 940 $kg/m^3$, 0.05 to 0.5% by weight of at least one saturated fatty acid amide represented by $CH_3(CH_2)_nCONH_2$ in which n ranges from 6 to 28[,] 0 to 0.15% by weight of a subsidiary lubricant selected from fatty acids, fatty acid esters, fatty acid salts, mono-unsaturated fatty acid amides, polyols containing at least 4 carbon atoms, mono- or poly-alcohol monoethers, glycerol esters, paraffins, polysiloxanes, fluoropolymers and mixtures thereof, and 0 to 5% by weight of one or more additives selected from antioxidants, antacids, UV stabilizers, colorants and antistatic agents.

Docket Entry No. 45-6 at 6:5–17.

The '846 patent describes a polyolefin-based composition consisting of polyolefin and—per 100 parts by weight of polyolefin—0.1 to 5 parts by weight of lubricating agent and from 0.05 to 2 parts by weight of zeolite.  Docket Entry No. 45-7 at 1:38–45.  It further describes the preferred polyolefin, recommending polyethylene as the "most advantageous" if having a density of at least 940 $kg/m^3$. *Id.* at 3:24–29.  The '846 patent also describes use of a lubricating agent that may be chosen from several compounds including saturated fatty acid amides—specifically naming stearamide—and explains that "amides of saturated or

unsaturated fatty acids containing from 12 to 35 carbon atoms, and mixtures thereof" give "good results." *Id.* at 2:48–65. It describes the quantity of the lubricating agent as being at least .1 and no more than 5 parts per 100 parts by weight of polyolefin, and refines the preferred range to 0.2–1 parts by weight, explaining that quantities of at least 0.4 parts by weight are the most common. *Id.* at 2:66–3:7. In addition to the polyolefin and lubricating agent, the '846 patent provides that the composition "may also contain usual additives such as stabilizers[,] . . . colorants[,] [or] antistatic agents." *Id.* at 3:43–50.

For ease of analysis, the Court breaks claim 1 of the '863 patent into subclaims and examines whether the '846 patent anticipates each in turn. These subclaims are:

1. Composition comprising at least 94.5% by weight of a polyethylene with a standard density of more than 940 kg/m$^3$;

2. 0.05 to 0.5% by weight of at least one saturated fatty acid amide represented by $CH_3(CH_2)_nCONH_2$ in which n ranges from 6 to 28;

3. 0 to 0.15% by weight of a subsidiary lubricant selected from fatty acids, fatty acid esters, fatty acid salts, monounsaturated fatty acid amides, polyols containing at least 4 carbon atoms, mono- or poly-alcohol monoethers, glycerol esters, paraffins, polysiloxanes, fluoropolymers and mixtures thereof; and

4. 0 to 5% by weight of one or more additives selected from antioxidants, antacids, UV stabilizers, colorants and antistatic agents.

### a.  The prior art '846 patent discloses subclaim 1 of claim 1 of the '863 patent

The '846 patent discloses a number of compositions, including one calling for an amount of polyethylene ranging from roughly 93.45% to 99.85% of the total weight, disclosing polyethylenes "of at least 930 kg/m$^3$, in most cases of at least 935 kg/m$^3$, [those having] values of at least 940 kg/m$^3$ being the most advantageous ones."  Docket Entry No. 45-7 at 1:38–44; 3:24–33.  Ineos does not dispute that the '846 patent discloses 94.5% by weight of a polyethylene with a standard density of more than 940 kg/m$^3$.  *See* Docket Entry No. 95.  And the Court is satisfied that this portion of claim 1 of the '863 patent is anticipated by the '846 patent.

### b.  The prior art '846 patent discloses subclaim 2 of claim 1 of the '863 patent

Ineos contends that the '863 patent's genus of the "23 Primary Linear Saturated Fatty Acid Amides" (PLSFAA) is novel over the prior art.  Ineos points out that the lubricant in claim 1 is more limited than the lubricant in the '846 patent; it limits the selection to 23 PLSFAAs rather than a choice between "glycerol esters, polysiloxanes, amides of saturated or unsaturated fatty acids containing from 12 to 35 carbon atoms, and mixtures thereof."  Docket Entry No. 45-7 at 6:8–12.  But a prior art reference that discloses a particular species anticipates the genus (in this case, all saturated fatty acid amides) to which the

species belongs. *In re Gosteli*, 872 F.2d 1008, 1010 (Fed. Cir. 1989); *In re Slayter*, 276 F.2d 408, 411 (C.C.P.A. 1960). Ineos does not dispute that the '846 patent discloses stearamide, a compound Ineos identifies as a "PLSFAA." Ineos's argument that the prior art expresses no "specific preference" for stearamide is of no avail. For prior art to anticipate a patent, it need not exhibit preference. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) ("This court rejects the notion that one of these ingredients cannot anticipate because it appears without special emphasis in a longer list. To the contrary, the disclosure is prior art to the extent of its enabling disclosure." (citing *Hewlett–Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1324 n.6 (Fed. Cir. 2003))); *Hewlett–Packard Co.*, 340 F.3d at 1324 n.6 ("The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed." (citing *Celeritas Techs. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998))). At its core, Ineos's argument for "specific preference" is nothing more than a different spin on calling the Court to limit its analysis to the "preferred embodiment" of the prior art—something rejected time and time again by the Federal Circuit. *See Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1371–72 (Fed. Cir. 2005) ("[I]t was error for the district court to limit the disclosure of the prior art reference to a preferred embodiment."); *Ultradent*

*Products, Inc. v. Life-Like Cosmetics, Inc.*, 127 F.3d 1065, 1068 (Fed. Cir. 1997) ("The district court thus erred by construing the scope of the [the prior art] disclosure as limited to the preferred embodiment."). In fact, even if the prior art "teaches away" from the patent's claim, it can anticipate as a matter of law. *See, e.g.*, *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) (a prior art reference is no less anticipatory when it discloses the invention and then disparages it). The identities of different preferences limiting its broader disclosures can be found throughout the '846 patent. The specific identification of stearamide within a list of potential lubricating agents is no different. Because the '846 patent discloses the species of stearamide, the genus of saturated fatty acid amides—which subsumes Ineos's preferred "subgenus" of the 23 PLSFAAs—is anticipated.

Relying heavily on the Federal Circuit's holding in *OSRAM Sylvania, Inc. v. American Induction Technologies, Inc.*, 701 F.3d 698, 706 (Fed. Cir. 2012) ("[H]ow one of ordinary skill in the art would understand the relative size of a genus or species in a particular technology is of critical importance."), Ineos argues that claim 1's identification of the lubricating agent's range from 0.05 to 0.5% is not anticipated because the '846 patent discloses and claims the larger, overlapping range of 0.1 to 5 parts by weight. Were the '846 patent's disclosure solely of a range, Ineos may be correct. This argument, however, ignores the '846 patent's

disclosure of "at least 0.1 part by weight per 100 parts by weight of polyolefin, in particular of at least 0.2 parts by weight, quantities of at least 0.4 parts by weight being the most common ones."  Docket Entry No. 45-7 at 2:67–3:3.  Unlike in *OSRAM*, the prior art patent in this case makes specific disclosures along with the broader disclosure of the full range.  Allowing the patenting of a range that encompasses "the most common" weights disclosed by prior art would effectively bar even the holder of the original patent from utilizing the most common applications of the prior art by causing them to infringe the later patent.  Again, disclosure of a species within a range anticipates the entire claimed range. *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985) ("It is also an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if *one* of them is in the prior art."  (citing *In re Petering*, 301 F.2d 676, 682 (C.C.P.A. 1962) (emphasis in original)).

### c.  The prior art '846 patent discloses subclaim 3 of claim 1 of the '863 patent

Ineos argues that claim 1's disclosure of 0 to 0.15% weight of a subsidiary lubricant is not anticipated by the '846 patent.  This argument fails for two reasons.  First, in the '846 patent's disclosure of lubricating agents giving "good results," it includes "glycerol esters, polysiloxanes and amides of saturated or unsaturated fatty acids containing from 12 to 35 carbon atoms, *and mixtures thereof*."  Docket

Entry No. 45-7 at 2:59–62 (emphasis added).  "And mixtures thereof" implies the use of more than one lubricating agent, making one agent the subsidiary. Furthermore, the '846 patent discloses both the optional use of subsidiary lubricants as well as additives.  *See, e.g.*, *id.* at 1:48–50 ("[The] lubricating agent [is] intended to denote . . . one or more lubricating agents . . . .").

  Second, when the acceptable range of a component includes zero, that component is by its nature discretionary.  If one were to practice every portion of claim 1, he could still infringe by not including a subsidiary lubricant at all. Recalling the maxim that what "would literally infringe if later anticipates if earlier," it follows that prior art need not include a subsidiary lubricant to anticipate claim 1.  *Bristol-Myers Squibb*, 246 F.3d at 1378.   In *Titanium Metals*, along with the two limitations of a certain percentage of nickel and molybdenum, the claim sought to be patented included "up to 0.2% maximum iron."  778 F.2d at 776.  The Federal Circuit found that the claim was anticipated by a reference that disclosed a composition that included nickel, molybdenum, and the balance titanium—that is, a composition without iron.  *Id.* at 780–81.  The optional limitation of "up to 0.2% maximum iron" was satisfied by the prior art, which made no mention of including iron.  That optional limitation of "up to 0.2% maximum iron" in *Titanium Metals* is strikingly similar to the '863 patent's disclosure of 0 to 0.15% weight of a subsidiary lubricant.  Just as the prior art's

disclosure of a composition without iron in *Titanium Metals* anticipated the optional limitation there, so too do the '846 patent's disclosures of "mixtures thereof" and "one or more lubricating agents" anticipate the '863 patent's optional limitation here.

### d. The prior art '846 patent discloses subclaim 4 of claim 1 of the '863 patent

Ineos argument that subclaim 4 is not anticipated by the '846 patent fails for the same basic reasons as with subclaim 3. Claim 1 discloses the use of additives—such as stabilizers, colorants, and antistatic agents—in a range of 0 to 5% by weight. Docket Entry No. 45-6 at 6:15–17. The '846 patent discloses that "the composition according to the invention may also contain usual additives such as stabilizers . . . colorants . . . or antistatic agents . . . [in an amount] generally lower than 10 parts by weight per 100 parts by weight of polyolefin." Docket Entry No. 45-7 at 3:43–50. The '863 patent's inclusion of zero in the acceptable range is simply a numerical expression of the phrase "may also contain" found in the '846 patent. Because the '846 patent discloses the same optional use of additives as claim 1 of the '863 patent, the prior art '846 patent anticipates subclaim 4 of claim 1 of the '863 patent.

### e. Summary of findings as to the prior art '846 patent's anticipation of claim 1 of the '863 patent

Given the above discussion, the Court is convinced that a person of ordinary

skill in the art reading the '846 patent in its entirety would have understood it to disclose a method for making bottle caps consisting of polyethylene, a saturated fatty acid amide lubricant, and optional subsidiary lubricants and additives within the same ranges claimed by claim 1 of the '863 patent.  Each component of the '846 patent that claim 1 of the '863 patent reads on is clearly and unambiguously disclosed to a person of ordinary skill in the art who reads through the '846 patent in a normal manner "without any need for picking, choosing, and combining various disclosures not directly related to each other."  *In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972) (emphasis removed).

Ineos argues that the '846 patent's inclusion of a zeolite—compared to '863 patent's statement that "[t]he composition of the invention is free of zeolites"—is so significant that the result is "the '846 patent disclos[ing] very different compositions than those of the ['863] patent."  Docket Entry No. 95 ¶¶ 86–87.  But the presence of a zeolite does not change the anticipation analysis here.  Prior art that includes an extra component anticipates a patent that claims the same elements but excludes the extra component.  *See* 1 Donald S. Chisum, Chisum on Patents, §3.02(1)(f) ("For anticipation purposes, as for infringement purposes, it does not matter that the anticipatory (or infringing) item contains elements in addition to those specified in the patent claim in question.").

Tellingly, Ineos does not dispute that the '846 patent discloses all of the

components of claim 1 of the '863 patent.  Asked at the summary judgment hearing to explain which elements of claim 1 were not disclosed in the prior art '846 patent, counsel for Ineos said only that "[i]t's the combination that's new." Docket Entry No. 92 at 59:13.  But—as demonstrated above—the '846 patent lays out each component of the final composition along with instructions for assembling them into a final amalgamation; the fact that they are not presented in a manner as concise as claim 1 is irrelevant.

### f.  Berry need not provide expert testimony to oppose that of Ineos's experts

The proffered testimony of Dr. Chris Scott and Dr. Denis Plume by Ineos does not contradict the plain meaning of the claims—a meaning which neither party disputes.  The conclusions of one party's experts are not binding on the Court.  And Berry need not offer its own experts on the question of anticipation because "expert witnesses are not required, and normally are not expected, to offer legal conclusions."  *Promega Corp. v. Applied Biosystems, LLC*, 2013 WL 2898260, at *8 (N.D. Ill. June 12, 2013) (Posner, J., sitting by designation).[4] Whether the '846 patent anticipates the '863 patent based on the undisputed factual record is a legal question.  The Court is convinced that the answer is "yes."

---

[4] Ineos filed a Motion to Strike the Declaration of Berry Plastics Corporation's Undesignated Expert, Dr. Mark Rule (Docket Entry No. 70).  The Court did not rely on Dr. Rule's declaration in reaching its holding and does not rule on that Motion at this time.

### 2.  Claims 2–7 and 9–11

Having concluded that the '846 patent anticipates claim 1 of the '863 patent in its entirety, the Court turns to the '863 patent's dependent claims.  *See Wahpeton Canvas Co., Inc. v. Frontier Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").  Ineos elected not to brief the validity of the '863 patent's dependent claims, and analysis of these claims is straightforward.

### a.  Claim 2

Claim 2 provides a "[c]omposition according to claim 1, in which the saturated fatty acid amide is selected from linear saturated fatty acid amides containing at least 12 carbon atoms, and mixtures thereof."  Docket Entry No. 45-6 at 6:18–21.  Stearamide is a "linear saturated fatty acid amide" containing at least 12 carbon atoms. The '846 patent's disclosure of stearamide is thus a disclosure of the genus of claim 2, which is anticipated.

### b.  Claim 3

Claim 3 provides a "[c]omposition according to claim 2, in which the saturated fatty acid amide is behenamide."  *Id.* at 6:22–23.  Because behenamide is a common saturated fatty acid amide lubricating agent, the Court finds that the '846 patent's disclosure of the genus of saturated fatty acid amides—through its

species disclosure of stearamide—prevents the patenting of the well-recognized PLSFAA species of behenamide. *See In re Petering*, 301 F.2d at 682–83 (finding generic disclosure of chemical formula encompassing 20 compounds anticipated a species within that disclosed genus); *see also* MPEP § 2131.02 (discussing *In re Petering* and related cases). Accordingly, claim 3 is invalid as anticipated.

### c.  Claim 4

Claim 4 provides a "[c]omposition according to claim 1, wherein the saturated fatty acid amide content is at least 0.07% by weight, and does not exceed 0.4% by weight." Docket Entry No. 45-6 at 5:24–27. As set forth in this Court's discussion of claim 1, the prior art '846 patent discloses points within this range: specifically 0.1, 0.2, and 0.4 parts per 100 of a saturated fatty acid amide lubricating agent. Therefore, claim 4 is also invalid as anticipated.

### d.  Claim 5

Claim 5 provides a "[c]omposition according to claim 1, in which the polyethylene has a standard density of 948 to 960 kg/m$^3$." *Id.* at 6:28–29. The '846 patent discloses a range of densities from 930 kg/m$^3$, to "at most equal to 960 kg/m$^3$, values of not more than 955 kg/m$^3$ being recommended." Docket Entry No. 45-7 at 3:26–33. There is no meaningful distinction between the ranges claimed in the '863 patent and the prior art disclosure. Claim 5 is also invalid as anticipated.

### e.  Claim 6

Claim 6 provides a "[c]omposition according to claim 1, in which the polyethylene has a melt index $MI_2$ of at least 0.05 g/10 min and which does not exceed 10 g/10 min."  Docket Entry No. 45-6 at 6:29–32.  The '846 patent discloses the exact range of the melt index claimed by claim 6: "at least 0.05 g/10 min" to "10 g/10 min."  Docket Entry No. 45-7 at 3:34–42.  Claim 6 is therefore also invalid as anticipated

### f.  Claim 7

Claim 7 provides a "[c]omposition according to claim 1, in which the antioxidant content is at least 0.01% by weight."  Docket Entry No. 45-6 at 6:33–34.  This range is also disclosed by the prior art '846 patent. Example 1 sets forth antioxidants in the amount of "0.025 parts by weight of antioxidant."  Docket Entry No. 45-7 at 4:66.  This satisfies the "at least 0.01% by weight" range of the '863 patent and, thus, anticipates and invalidates this claim.

### g.  Claims 9 & 10

Claim 9 provides for a "[c]omposition according to claim 1, wherein the subsidiary lubricant content does not exceed 0.1% by weight."  Docket Entry No. 45-6 at 6:38–39.  Claim 10 provides for a "[c]omposition according to claim 1, which is free of subsidiary lubricant."  *Id.* at 6:40–41.  The prior art '846 patent contemplates subsidiary lubricant amounting to zero percent by weight through its

instruction that a subsidiary lubricant is optional.  Docket Entry No. 45-7 at 1:48–50 ("[L]ubricating agent [is] intended to denote . . . one *or more* lubricating agents." (emphasis added)); *id.* at 2:48–65 ("Lubricating agents which give good results are glycerol esters, polysiloxanes and amides of saturated or unsaturated fatty acid . . . *and mixtures thereof.*" (emphasis added)).  Subsidiary lubricant totaling zero percent is necessarily not in excess of "0.1% by weight" and would make the composition "free of a subsidiary lubricant."  Thus, both Claims 9 and 10 are invalid as anticipated.

### h.  Claim 11

Claim 11 provides a "[m]ethod for producing shaped items from a polyethylene-based composition according to claim 1."  Docket Entry No. 45-6 at 42–43.  The '846 patent describes a method for producing shaped objects from a polyethylene-based composition, as discussed in depth *supra*.  *See* Docket Entry No. 45-7 at title and 4:13–19.  Due to the prior art '846 patent's disclosures, claim 11 is also invalid as anticipated.

### i.  All dependent claims are invalid as anticipated

Accordingly, the Court finds the '863 patent's dependent claims 2–7 and 9–11 are also invalid as anticipated by the prior art '846 patent.

## V.  CONCLUSION

For the foregoing reasons, Defendant Berry Plastics Corporation's Motion for Summary Judgment (Docket Entry No. 45) is **GRANTED**.  The Court finds that there is no genuine issue of material fact with respect to the '846 patent's disclosure of each and every element set forth in the asserted claims of the '863 patent in a manner recognizable to a person of ordinary skill in the art.  Therefore Berry has proven by clear and convincing evidence that the asserted claims of the '863 patent are invalid as anticipated by the '846 patent.

**SIGNED** this 15th day of April, 2014.

_____

Gregg Costa
United States District Judge